Good afternoon, judges. My name is Wayne Sachs. I'd like to reserve three minutes for our rebuttal time. I'm here on behalf of Petitioner Victor Aguilar. The crux of the government's position in this case is found on page 19 of their brief, and we suggest that it rests on an unsupported speculative assertion regarding many things, not the least of which is predictions about human behavior. And I think the quote is important in its breadth and the fact that it's not tethered to anything in the record or any part of the categorical analysis. That quote is that it cannot be disputed that an individual will naturally resist and resist strongly nonconsensual attempts to penetrate his or her private parts. But the truth or falsity of that statement is not really at issue. What's at issue is that by the nature of the crime, the nonconsensual sexual assault, by its nature it involves a substantial risk. Isn't that correct? Well, it is true that that's the court's inquiry. However, I don't believe that it's irrelevant that the government casts it in that light because the assumptions about the nature of the crime are reflected by the government's quote. When you say assumptions, you're talking about assumptions. Just focus in on 16b with us. 16b speaks of substantial risk, right? That's correct. Okay. What is it about the BIA's reasoning, which I understood to be something to the effect of that, you know, if you're having physical penetration of another person against their will, there's certainly some substantial risk they're going to resist. What is it about that that's illogical or sort of stretches beyond the pale in your view? Very specifically that the BIA, the agency, and the government have equated the element of nonconsent with resistance. And in fact, that is something that is a notion that was rejected specifically in the construction of the instant statute. We're not speaking now about sexual assault in the abstract or immoral behavior in the abstract. We're speaking about the categorical analysis of a very particular statute, which was passed in response to what the Pennsylvania legislature thought was a deficiency in the existing scheme of sexual offenses. Isn't this just like burglary? I mean, you say they've equated it with force and resistance, but I understood them to be saying something to the effect of there may be nonconsensual and nonresisting acquiescence at first, but there's a risk that at some point that can change and it will escalate to violence. Isn't there a, you know, isn't that a logical thing to suppose that somebody might start off cowed into doing nothing and yet at some point start resisting physically? Judge Jordan, I respectfully disagree that it's like burglary. In fact, it's not like burglary because burglary is a specific intent crime for which the burglar takes the risk that there is going to be perhaps the use of force that needs to be employed. In fact, Parsons, this court's third circuit, this court's burglary case, is very easily distinguishable than the situation where there's a reckless mens rea. This was a jury trial in this case. But the recklessness goes to the mens rea, goes to the consent. It does not go to the force of the penetration or anything. Judge Barry, what I'd say to that is as a matter of physics, there is always some element of force even in a consensual sexual encounter. But 16b talks to violent force and not the type of force that would... I'm a little with you there because this is one of the things that's been troubling me. 16 is action, crime of violence, violence, and then you go to b and we're into the force, sexual, non-consenting sexual. I agree, and not to interrupt you, but certainly 16b as a residual clause could not have meant to be something other than referring to violent force. That's my question, and the question is how much force keeps it within 16b and not make it rape? How do you draw the line between what is the force that is necessary here? Is it mere penetration? And where does it become rape? If it was just mere penetration, most respectfully, there'd be no reason for this statute under Pennsylvania law. There'd be no reason to have a... If the force required to uphold a rape conviction was just the force required to accomplish the sexual penetration itself, this would be a meaningless statute. But in fact, it's just the opposite, that in the non-forceful... The legislature responded to the Berkowitz case, which entailed a situation between college students where someone challenged their rape conviction, and the evidentiary record was no resistance and no force other than... But why does that... Our statute doesn't require any force at all. Yeah, and why does that matter? Why does it matter? Maybe Pennsylvania has 16 sexual assault statutes with various gradations. The issue isn't how many statutes they have and what they require. It's does it fit within... That by its nature involves a substantial risk that physical force, physical force, I didn't say violent force, physical force against the person or property of another may be used. That's the test. And you look at the nature of the crime, why do we concern ourselves with what other crimes Pennsylvania may have on its books? I'd suggest that as part of... They may all be crimes of violence. As part of the categorical analysis, not only this court but the United States Supreme Court frequently examines a statute's place within other statutes in the statutory scheme. That's when you need to determine whether there are sets of facts that match, whether you have to align them here. We don't have that. We have by its nature involves a substantial risk. It's different. I wouldn't say that it's only a fact-based or modified inquiry that gets us to the place, the examination of a statute within the statutory scheme. In fact, the most recent Supreme Court pronouncement on this in the Sykes case examined the complete scheme of vehicle-type offenses in that state even though they didn't engage in a modified categorical analysis. So it's part and parcel of the categorical analysis to look at where a statute fits within the statutory scheme of sex offenses. Even assuming that's true, even assuming that's true, what's the fact that the Pennsylvania legislature may have felt as a matter of public policy we want to make it criminal to have sex with somebody who doesn't want to engage in that intimacy even if that person, you know, we're not going to require them to fight back in order to make that criminal. How does that speak to the substantial risk point in 16B? 16B, I guess I'm having trouble following your logic. Your logic is that the Pennsylvania legislature wanted to make sure that you didn't make women fight back in order to be able to raise a sexual assault charge. Okay, except that that's a public policy purpose. How does that undermine the language of 16B itself which talks in terms of substantial risk that things could escalate? Let me respond this way. Let's assume hypothetically, following your point, that there could be an escalation scenario, that there could be, that any encounter between human beings in this fashion raises the risk or substantial risk that it escalates to the point where not just someone has to use force to overcome consent, but in fact someone has to use force to overcome resistance. Let's assume hypothetically that in some portion of the cases that's so. There's no evidence on this record that would support that the risk is substantial. It's by the nature of the elembi, of what needs to be done in order to commit the offense. Here, the non-consent aspect gives rise to the nature that it involves substantial risk, that physical force, however small, may be used against a person or property. Well, Your Honor, the cases that speak about non-consent as the touchstone in the crime and violence context, I would submit none of them are statutorily like this case. None of them have a reckless mens rea. None of them have a reckless mens rea, and basically all of them are aimed at some type of protected class. But the recklessness here isn't on the actus rea. The actus reis is the assault. You don't recklessly commit the assault, correct? It is an intent crime. Well, the actual act itself is intentional. I think the mens rea of the recklessness of the other is kind of a red herring. Well, let me ask you this, if I could. Recklessness, we've been talking about recklessness here. In Tran, Judge Becker, writing for the court, spoke in terms of pure recklessness, contrasted what had existed before in describing Parsons and said, you know, in Parsons we went out of our way to say there's pure recklessness, and then there's something more, and the something more, the recklessness that's more, is what's talked about in 16b. If I could give you the specific language here. Judge Stern, I'm very familiar with that quote, and this is recklessness as it relates to the element of non-consent. In other words, certainly there's a reason why this court has always distinguished reckless actors from non-reckless actors in the assault context, regardless of the degree, in Partika and Popal and that whole line of cases. But getting back to Judge Rendell's point about the substantial risk, by its nature is something that is on one hand speculative and esoteric. The government still has the burden here. They still have the burden of showing by clear and convincing evidence that it would come within the ambit of something that was by its nature. That's why there's empirical evidence used in many of the substantial risk cases to distinguish, because it's a risk analysis. Second Circuit, Tenth Circuit, Sixth Circuit, Seventh Circuit, all these circuit courts looking at analogous statutes say, hey, if you are having non-consensual sex with somebody, you are risking physical force being involved. Judge Jordan. And I know you say, well, those are all protected classes, but that doesn't speak to the question of risk of force. Well, I have to disagree with the court. You're talking about stepfather, stepdaughter. You're talking about infirm, mentally impaired people. All those cases, the Second Circuit case, even Sutherland was a stepfather, stepdaughter case. Cherry was an impaired case. Isn't that an a-for-sure argument? I mean, if a stepfather, stepdaughter risks resistance, how much more so when they're not related and you don't have the overlay of parent, child, howling the person into no resistance. And where they're capable of consent but do not consent. Right. If you've got somebody impaired, so maybe they don't even have the mental capacity to resist. Isn't it even more likely you'll have resistance if you have people who are unrelated and unimpaired? Not according to the Pennsylvania legislature that constructed the statute specifically for non-forceful, non-consensual situations such as this. That seems to speak past the point. Yeah, we allow the IJs and the BIAs to apply this as they see the crimes. And it's not a matter that the Pennsylvania legislature dictates. And I'd only go just back to your point, Judge Jordan, about the other cases that have examined this, usually in this guidelines context and the ACCA context, which, as we know, is a different burden of proof that the government has to show only by a preponderance of the evidence that the enhancement applies, not by clear and convincing evidence. And it's hard to read those cases and examine the underlying statutes in those cases and not see the stark difference between the instant case, both as to mens rea and the elemental. I mean, sexual assault in Pennsylvania says except as provided in rape and involuntary deviant sexual intercourse. We have to give some respect to, as a categorical matter, to the language and policies underlying the sexual assault statute in Pennsylvania and why they came to be, and not to mention the case law which developed that enabled this statute to be passed. What's the mens rea required for the sexual assault statute? Well, there's no mens rea in the statute itself. We only know because this was a jury trial that we know that the jury was instructed that the jury would have to find that Mr. Aguilar acted knowingly or at least recklessly with regard to the element of non-consent. Well, I'm not worried about the element of non-consent. I'm worried about the person engages in sexual intercourse or deviant sexual intercourse. Is that not an intentional act? Well, the act of penetration would be intentional. That's correct. The question is whether it is done at the intentional actor that separates the rape or involuntary deviant situation is that the intentional actor or the burglar is bent on using whatever force is necessary to accomplish the goal, whereas the reckless actor, and I think this is the point, someone who's reckless with regard to non-consent, if there is resistance of any type, whether verbal or physical, the reckless actor, his goal is not to accomplish forcible sexual intercourse by any means necessary. It's just as likely, in my view, that the previously reckless actor would realize that he does not want to go any further. Well, you've pointed back to burglary, and the Supreme Court's language in Lee et al. is pretty specific. They say the classic example is burglary because burglary would be covered by 16b, not because the offense can be committed in a generally reckless way or because someone may be injured, but because by its nature, burglary involves a substantial risk that the burglar will use force against the victim in complete and time. By the very fact of going into the other person's home, you risk a confrontation. Whether it materializes or not, there's substantial risk there, and I guess the question is, by going into another person's body, I mean, don't you much more so risk that at some point there's going to be an escalation? Isn't it inherent in the crime itself, like every circuit who's looked at this has said, that there will be a substantial risk that mere non-acquiescence will turn into resistance to which force will be applied? I'd only say, Judge Jordan, that no statute like this has been looked at by any of those circuits. I mean, no statute that was specifically designed to address acquaintances in this context and unwanted sexual intercourse without the use of force or resistance. None of those cases, from Cherry to Brooker to any of those cases, none of those cases addresses a statute such as this. I'd like to reserve just a few minutes after my colleague. Yes, you've asked for that, that's fine. Thank you very much. May it please the Court. Rebecca Hoffberg Phillips on behalf of the United States Attorney General. I'm just going to pick up exactly where he left off in terms of, is this statute totally not comparable to other statutes? And the answer is actually no. If you take a look at the 10th Circuit's or Rook's decision, the difference is not so much in the statute as it is that they were evaluating the different definition under the ACCA, which is slightly different, but what's important is the rationale behind it. In the 10th Circuit, the only difference is that they said that it's basically intentionally caused penetration without consent. This is between adults, not children, not impaired. There are separate sections for those offenses. The one in Rook's, intentionally caused penetration without consent. That's basically exactly what we have here because as counsel admitted, there's no dispute as to the intentions regarding the actus reus, intentional penetration without consent. And what the 10th Circuit said in Rook's is that the sexual assault statute requires on a minimum, intentional non-consensual conduct against a person. This is distinguishable from DUI's and other crimes of recklessness or negligence. Sexual assault endangers the health and life of the victim, and that is also relevant to determining the violence and aggressive nature, which was under Begay, because that was, again, under the ACCA. And I think that that is the perfect statute to look at because it is the most like the statute. I understand that there are differences amongst every statute. The other thing I want to point out is that this is not pure recklessness. As Judge Jordan pointed out in the Tran case, if you look, Tran was a 16B case, and I think that it's very important to look at that because what the person was charged with was reckless burning or exploding. Recklessness was in the actual title of the crime, which is most of the crimes he points out in pure recklessness, near recklessness. It's called reckless engagement, reckless driving, reckless handling of a weapon. Whatever it is, it's reckless. This statute does not say reckless in it anywhere. Are you acknowledging, then, that mental state does have some bearing here because some of your argument in briefing seemed to imply that mental state has nothing to do with this. And, Your Honor, that's our first argument, definitely. And just in case the Court is buying some of this reckless idea, I wanted to say that. But don't we have to buy it based on Tran? I mean, don't Tran and Popal and our own precedents require us to look at mental state? With respect to whether or not you recklessly, well, the idea behind it is whether you're reckless as to causing the harm. That's what Tran had to do with, recklessness as to causing the harm. Because in that statute, you had to intentionally, intentionally start a fire or cause an explosion, and thereby reckless. It's recklessness as to the act, correct? Yeah, that was reckless. Well, it was reckless as the effects of what he was doing in terms of explosion and starting a fire. And so, what I wanted to point out is that... No, the recklessness was as to the victim's lack of consent. Right, in this case. But what I also want to point out about that is that it could have been knowing. And he actually admitted as much, which is very important, too. Because if you do want to look at mens re at all, again, the government's argument is that intentional penetration doesn't have any question about it. It's an intentional act. But if you want to consider the consent, the consent in this case is not always reckless with regard to it. It is knowing or reckless. In Tran, the crime of which he was convicted was intentionally starting a fire. It was reckless burning or exploding. Intentionally starting a fire. But the dispositive element was the reckless endangering the property of another. And we held it was not a crime of violence under 16b. Yes, that's correct. You held it was because recklessness... Endangering the property of another. Right. Just as in the burglary context, is there going to be involvement of people who are fighting back when someone enters their home? The same kind of thing. Well, I think that burglary is fundamentally different from the reckless burning or exploding. I mean, I think burglary is the universal epitome. But penetration here, like starting a fire, is not illegal under the statute. It's not the penetration that's illegal. Well, it is because it was without consent. That's it. That's right. It was without consent. But the point is that this is not entitled some reckless crime so that it always involves pure recklessness, is my point. Well, the other thing is, if you're talking about lack of consent, that does not involve a mens rea, does it? Well, I mean, the knowledge... It's not an issue of the knowledge of the offender. The perpetrator. I mean, it just happens that after the fact, the person had not consented. There is no mens rea element here of the consent piece, is there? Well, I agree that it's in the mind of the perpetrator, which is not... This statute is about whether the victim did or did not consent. Clearly, they did not. This is why the government doesn't believe that you have to get into that aspect of the mens rea there because if the person ultimately did not consent, you have the risk of someone overcoming that non-consent. And that's what... When I stated in my brief that... Well, that... Someone... Yes. That requires... With all due respect, that requires, does it not, a degree of a mental state? I mean, you couldn't possibly be here arguing that if somebody says three weeks later, you know what, I sure wish I hadn't had sex with you, and now you're going to go to jail and be deported. There's some aspect. It's not only the victim's mindset that matters. By its terms, the statute itself speaks in terms... Well, I shouldn't say by its terms. By force of Pennsylvania law, which imputes a minimum reckless mindset to a crime like this, there has to be some culpable mindset on the part of the perpetrator, right? I mean, we're not talking about a strict liability crime here, right? Right. It's not strict liability. So if it's not a strict liability crime, and there is some aspect of a mindset required that is culpable mindset on the part of the perpetrator, then... And when he finally realizes, reckless, when he finally realizes that it's a no, right? Yeah. That he's... Is it not as much a nature of this crime that he stops? Well, it's the fact that he achieves penetration. You have to achieve penetration under this statute. Well, we're talking about 16b, though. Right. But you have to achieve the penetration, so somebody didn't stop before penetration. So once there's penetration, you have a physical contact that requires a response. And the response, if someone is not consenting to the penetration... And again, this is what makes a sexual offense very different from other types of offenses where there isn't actual physical penetration that way It's a natural response. And it's just like burglary, because if you can defend your house, my goodness, you can defend your own body. And that's why I think the burglary analogy is so compelling in this case, because it's the risk. It doesn't matter whether force was actually used, because you do have other statutes that clearly show, okay, now we know that force was used. The fact is the victim can't always show that the perpetrator was intending to use force, and that's why they go for this statute. So the nature of the crime has to be one where there's a substantial risk that force was used, right? Or may be used. That may be used. Exactly, and the word may is important. Isn't it just as likely, and it's your burden, that it's with this reckless mens rea, that it's just as likely that once the perp realizes it's a no, he stops. There's just as much likelihood that he'll stop as that will continue. When does it become rape? I mean, when does it become rape here? Where's the line drawn? Well, I mean, I think listening to your argument, any penetration unconsented to is sexual assault, but isn't that also rape? Well, Your Honor, I think under most common people's understanding of rape, non-consensual sex is rape. I agree, but it doesn't matter that it is also considered... Well, maybe rape requires more force than is required here. It may require it, but we're talking about the risk of force. That is so key here because it is the risk, and that involves these inherent... Doesn't penetration involve some force in every case? Yeah, penetration will involve the idea of contact, and actually the Seventh Circuit, I think it's called the Flores Decision, was talking about how the use of force in physics versus physical contact with a person, they weren't using, they weren't accepting the fact that, of course, every touching, you will say, has force, and we're not going to look at just that, and I'm not telling the court to do otherwise. Certainly any touch is force. You have to understand the type of touch in this case is something so... It's so fundamental to a person's integrity, their bodily integrity, that this is not just any touch. This is not the same as touching someone over their clothes either, which the Pennsylvania case law makes clear, that this has to involve penetration. Well, you could argue that this is vague. Physical force against the person may be used. Well, it doesn't say after resistance, it doesn't say anything, and there could be that... I mean, physical force is just about anything. I know this was not decided below, but would you consider this a crime of moral turpitude? Well, Your Honor, you're correct. We'd have to send that back to the board to decide in the first instance whether or not that was. Yeah, wouldn't that have been a whole lot simpler? Or the other crimes. I do not dispute that that would have been a whole lot simpler, considering that this is a case of first impression in this court, and the court is being asked to decide on a statute that only the district court has decided in unpublished decisions. But I do think that the court can rely on those district court decisions as well as the other decisions in some of the other circuits that were mentioned. I think Judge Jordan pointed out about how just because there is a greater risk you'll resist or have force when you're not impaired or when you're a child, a child's going to be more complicit. A child is going to be scared. A child is going to potentially be abused by his own father or someone else who he's afraid to stand up to. I think that you made an excellent point that the victim who is not unimpaired... I'm just asking questions. Yes. So let me ask you a question here about Popal. We said in that case, looking at the Pennsylvania Simple Assault Statute... I'm sorry, which case? It's Popal v. Gonzalez. Okay. We said in looking at the Pennsylvania Simple Assault Statute that it requires a mens rea of recklessness rather than intent, and, quote, it is not a crime of violence under 16A. Okay, so it's a 16A case, but the principle, I guess, I'm asking you is were we laying down a marker there that says it's got to be more than reckless for it to be a crime of violence in our circuit? I think that that's pretty consistent with other... I think the Ninth Circuit has also found with battery that that is the general idea behind it, and our position is that this is more than reckless. But the instruction to the jury was knowing or at least reckless. If the jury is instructed that under Pennsylvania law this crime can be committed with a state of mind reckless, are we then obligated under a categorical approach to say, well, we look at the lowest possible mindset that's involved, it's reckless according to Pennsylvania law, therefore this conviction does not qualify as a crime of violence under 16B. That's the logic I take it that your opposing counsel wants us to adopt. But that's as to the knowledge of consent. It's not as to the penetration. That's exactly the government's position, is that that mens rea is not affecting the intentional penetration, which is what is creating the risk. It is the fact that there is non-consent. There is non-consent. As Judge Rendell pointed out, it's not up to the perpetrator. In his mind, the fact is that there is no consent, and you are overcoming. It's the risk that in overcoming someone's non-consent, which you have to do under the statute, you have to overcome someone's non-consent to achieve penetration. So you're telling me that the Pennsylvania law, the judge instructed the jury incorrectly? The judge instructed the jury that you can find Mr. Aguilar guilty if you decide that he was reckless. That was the instruction given, and I think it was consistent with Pennsylvania law, which says where there's not a statement of mens rea in the statute itself will imply knowing or at least reckless. Now, if that's the case, that that's actually the state of the law, and that's the instruction that's given to the jury, why isn't that what is controlling here as far as the mens rea we have to have in mind? Because they were convicting him as a matter of what satisfies the statute. This court is now taking a state statute and putting it into the federal context of the definition, and that's why it's also our position that the scheme, the statutory scheme under Pennsylvania law, is not the determining factor. It doesn't matter that he was convicted under Pennsylvania law with these jury instructions, which arguably under the categorical approach, you're not really giving that too much weight because you're looking at the terms of the statute itself. No, but it does. I mean, if the statutory requirement has a recklessness standard by virtue of Pennsylvania law, then we do. I mean, that's part of its nature is the recklessness standard. So, I mean, I think we do have to consider that. The question is whether the reckless non-consent aspect overtakes or undermines the intentional perpetration aspect. And maybe it does. I mean, if someone just, you know, the person said, oh, you know, sure, you know, go ahead, and the person recklessly thought they said, you know, he said no and they, you know, recklessly thought they said yo, you know, and the consent was wrong and then went ahead and conducted the perpetration and then later said, wait a minute, you know, I heard yo, not no, don't convict me of this crime. Would that, by its nature, if it's a reckless mens rea, as to the consent, and that's the minimal standard, then is this, does this fit? Well, but the person did say no, and they did have to overcome that no, regardless of what's in the mind of it. Are you talking about this case? I'm not talking about the facts of this case at all. But if the person said no and the offender heard yo, not no, and that was reckless on their part, would they, would then it have been a... It doesn't change the fact that there's a substantial risk of the use of force in having that penetration. No, but I'm going back to the issue of we have held that the crime of violence has to have a minimal, intentional, not reckless mens rea, correct? They intended to penetrate, regardless of what they thought. Okay, you're saying that, but I'm playing the devil's advocate. Right. I'm going along with what Judge Barry was saying, that is it a crime of violence, have you committed, is it a crime of violence if there's a reckless lack of consent, such that under a case law that says crime of violence has to be intentional, that would not be the case? Well, Your Honor, we, our position is that even if there was recklessness with regard to the non-consent, that the elements combined together with the fact that there was non-consent and there was intentional penetration and doesn't matter that force was not actually used, it was the substantial risk of it. It's the pure recklessness, is that what you're hanging your hat on? I'm sorry? I think the reckless endangering. Pure recklessness, that is the distinction in TRAN. Right. The distinction in TRAN is that it was looking, the very fact that, first of all, under the statute, as you know, you're looking at the typical situation, which could be knowing or reckless, according to petition and according to these jury instructions. Yeah, but we've got to go to the lowest one, right? Got to go to the lowest. So the knowing doesn't help you. The only thing I can see that could possibly be of assistance to the government here is the analogy, again, to burglary, that this is, which TRAN describes as involving something more than pure recklessness. Absolutely, because it's invoking a potential response from someone in self-defense, and there's nothing more fundamental about that. Because when someone is not consenting, whether it's to the intrusion of their home or the intrusion to their body, they are not consenting to something and they are going to defend themselves or their property. Does burglary have as an element, without the permission of the person? I think it's the unlawful entry with the intent to commit a felony or larceny therein. Yeah, but does it have as part of it, without the permission of... Well, the unlawful entry is usually a non-permissive entry. I understand the court, actually this just came out in the Ninth Circuit in the Accio Montes decision, talking about what it means to have unlawful entry in the generic burglary. And it could just mean entry is actually permissive, but you had the intent to commit the crime and that was an unlawful entry, even though it was a consented actual physical entry. But how do we square it with the reckless endangerment with the fire? I mean, setting the fire, but because it was reckless endangerment, even though the fire was intentionally set, the act, it still wasn't a crime of violence. How do you square that with this? It's not a sexual offense. It's plain and simple. I mean, I think that the fact that... Because you recklessly set the fire, is that the idea? Well, he recklessly, I mean, it looks like he may have intentionally, or it was also a conspiracy. Intentionally set the fire. So it aided, it was also, you could have aided someone to set the fire, I think. The point is that a sexual offense is fundamentally different than any other type of... Where does that come from? Where do you get that proposition? Well, actually, in the Lizbey decision, in the Ninth Circuit... Why would Tran not apply to this case? Simply because this is a sexual offense? Well, that's why burglary has been compared to sexual offenses. In the Lizbey decision in the Ninth Circuit, they find that in sexual offenses, and burglary are like... But why would Tran not apply? Oh, why would Tran? Oh, because, well, in Tran, it's... The burglary of a dwelling is nearly... They say the mens rea is nearly as bad as specific intent. So you should... I mean, why are you not really resisting Tran? I mean, aren't you arguing for an application of Tran? Well, yes, we think that Tran, this case is consistent with Tran, because what Tran acknowledged... But I thought you said sexual offenses are different. Well, no, it's different in terms of the actual type of offense. I mean, in terms of the rationale used under a 16b analysis. Because, you know, a lot of these decisions, they don't necessarily involve 16b. They're the sentencing guidelines, or they're the ACCA, which are... Well, we're dealing here with Section 16, which is a criminal statute. You have the burden here. And I think, speaking only for myself, I see a lot of ambiguity in this criminal statute. Cleary, are you familiar with the rule of lenity? Yes. How would that affect this case? Well, I understand that when there's ambiguities... But our argument is that there is no ambiguity in the nature of this statute. Finish your... Just that when there are ambiguities, that you would err on the side of caution, in a sense, and, you know, err on the side that... The defendant would win. Right. No, I... Is there a burden to show us that there are no ambiguities... That's correct, Your Honor. ...in the application of 16b to this case? And the government believes that there isn't an ambiguity because of the intentional penetration involved and the analogy to the burglary offense, which is universally recognized as a 16b offense, despite the fact that there doesn't have to be any contact at all in the burglary definition and what it means to commit burglary. It's just the risk of confrontation. It's the risk of confrontation. That's what you're dealing with here. And even more compelling than burglary is a sexual offense where there was a confrontation. It wasn't just the risk of a confrontation. It was a confrontation and thus the physical aspect to it is almost fundamental to the crime. As opposed to burglary, you don't actually start with a crime that involves physical contact. So it's the fact that there was already this penetration involved. Anybody who is not consenting to that, it has a natural impulse. That's what I meant in the brief when I said it's undisputed, this natural impulse, because if someone touches you and you don't like it, you almost have a natural impulse. So if someone goes so far as to penetrate you, I think that it can't be disputed that you have a natural impulse. And that's what I think that 16b is talking about, the risk of this happening, the substantial risk, and it is substantial when you're in a penetration situation. And the fact that there are other crimes in the Pennsylvania statute that address 16a does not take away from the fact that... I mean, I think that's why there's a 16a and a 16b. 16b does address what 16a doesn't address, just like 3124.1 addresses what the actual rape, which is the intentional use of force, or the threat of force, and that is something that just because that statute wasn't used... I mean, maybe the statute was enacted because the legislature thought there would be little force used, or maybe it was used in this case because the victim couldn't prove the intent of the perpetrator. But that doesn't matter because the perpetrator's intent with respect to their consent, they intended to penetrate, and so it's the government's position that the court does not need to consider the mens rea of the consent, the non-consent. I see that my time is up. So unless the court has any further questions, the government will rest on its brief. Thank you. Thank you. Thank you, judges, for the opportunity. I'd like to just respond and follow up on the point of what the intent of the actor is who is rebuffed. The burglar... Burglary is a specific intent crime that is complete upon the entry into the dwelling, whether or not there's someone present. But Lee et al. doesn't hinge on that point. The Supreme Court is specific in saying the reason it's a 16b crime is because of the risk that you're going to confront somebody. That's the thing that makes it a 16b crime. However, it is, in fact, a specific intent crime, and when you specifically intend to commit a crime inside a dwelling, you go inside that dwelling, the crime is complete. And, of course, the risk is there that there could be somebody there inside that dwelling, but in the instant statute, and in terms of the vagueness of 16b, Justice Scalia had some interesting comments about that in the Sykes case because, of course, where does it say, as my colleague asserts, that sexual crimes are different, and therefore within the ambit of 16b in a more expansive way than other crimes within the residual clause? I'd only point out that all the cases cited by the government, are all pre-Begay. Many of them are pre-Leotow. And the notion that a 16b crime embraces someone who is willing to pull out a gun and point the trigger, that's the specific language in the Begay case, it goes right to your point, Judge Barry, is it not equally likely that the previously reckless actor, when confronted with some resistance, will just not continue? How do you define the nature of this offense? I don't know. Well, to the extent that the actor's mens rea is particularly relevant, I must disagree with my colleague on this point because it all goes to the reasonableness of his perception of whether, in fact, there is consent or not. And I'd have to say that it's very hard in the factual context of a sexual encounter to distinguish between recklessness as it goes to consent and not have that recklessness as part and parcel of the physically intentional act of penetration. Then how do you address the distinction that this court drew in Tran and in Parson between, quote, pure recklessness, and that is, Tran's use of it is like putting it in quotes, pure recklessness, and sort of a heightened kind of recklessness, which is the recklessness 16B envisions, that is, risking some escalation to greater problems. And, in fact, Tran... I'd say the reverse. In Tran, the intentional act came first. It was the intentional burning without an appreciation, with only a reckless appreciation or non-appreciation of what the consequences of the burning would be. So that's the distinction. In this case... Well, couldn't you say this is just the same? Couldn't you say that this is an intentional physical encounter with a reckless mindset about whether the victim wanted it or not? Does she want me to be making these advances and penetrating her body or not? I don't care. I'm reckless about that. Isn't that the same? Well, I guess the question is, what does encounter mean? When is the crime complete? The crime is complete upon penetration. The question is, in penetrating, which is an intentional act, was there some reasonably... Was it a recklessness that was... Was the defendant's perpetrator's state of mind reasonable, just like in the yo-no situation? In other words, you have to... In fact, one of the Pennsylvania cases, and it's cited in the brief, that followed, I believe it's the Fisher case, which called for, in light of Berkowitz and in light of the sexual assault statute, it called for supplemental jury instructions, and specifically this situation that would ask the jury to consider the reasonableness of the defendant's apprehension of whether there was consent or not. Right, so you really are talking about a case, aren't you, where to be convicted under this Pennsylvania statute, it takes a little bit more than misunderstanding no for yo. You've got to be... You just have to have a sort of a... I just don't give a flying... You know what you want and what you don't want. I'm getting what I want, and I'm getting it right now. That's rape, you are. That's sort of a... That's rape, Judge. That is rape. If you are willing to accomplish the end result at all costs, including the rebut of resistance with force, or the rebut of verbal non-consent with force, that's rape. Under 3121, that's forcible compulsion or threat of forcible compulsion. Well, threat of forcible compulsion... I'm sorry? Yeah, that's... Rape has, under Pennsylvania statute, has that threat of forcible compulsion, but the 3124.1 language is specific in talking about intercourse without a complainant's consent, and we read into that a recklessness. Now, I don't know how to read recklessness except something higher than mere negligence, something that involves a... I really don't... You know, whether you're interested or not is not something I'm all that interested in. I'm proceeding heedlessly. That's what reckless means, doesn't it? However, Your Honor, I would have to say that there's no other way to parse between a rape statute... Again, we're not talking about an abstraction here. This is a rape statute and a sexual assault statute. Sure there is. You've just given it to me. You just said it. It's either force or threat of force. That is, I either actually am forcing you or I say something or I'm doing something that shows I'm going to force you, whereas this statute seems to be saying there doesn't have to be those atmospherics that involve actual or immediately threatened force. There just has to be enough for you, the perpetrator, to have, by any reasonable standard, be on notice that this is very unwelcome and you're proceeding heedless of that. That seems to me to be the fair reading of the statute. However, if someone goes into that encounter with the intent to commit the act regardless of what the complainant's response is, I would submit to you that's not sexual assault. That's rape because you're acting regardless of what the response would be and just getting finally to the essential nature of 16b, as has been perhaps apparent from this discussion, it's so hard to arrive. What's the essential nature of a non-forceful but non-consensual encounter? And that's why I come back to the... Under the category crime of violence. I come back to the... The title of the statute... Of 16b, that's right. ...is crime of violence. Exactly. As to... And here, no force is even required for there to be a crime. And that's why... And the only force that exists here would be the force sufficient to cause penetration. And that is why, Judge Barry, I come back to the lack of any empirical... This could be a case... What's your best case? What's your best case as authority for... Well, I think any of the recklessness cases from this circuit and any of the post-begay reckless cases, Polk and all the cases that have come out in the last... But let me point to something in Tran. We said there, Tran intentionally started a fire. But, of course, starting a fire is not in itself a crime, much less a crime of violence. The second dispositive element of his crime is the reckless endangering of the property of another. All right? So we didn't say there, okay, because there's another element that's reckless, which I'd say, like, is your non-consent. We didn't say, okay, no crime of violence. We then went on to say this element on its face involves a substantial risk of causing injury to the property of another, but it does not involve a substantial risk of using force against the property of another. Therefore, it's not a crime of violence. But we didn't... As 16b. No, no, no. But we didn't stop the analysis by saying, okay, there's an intentional act and then a reckless mens rea with the endangering, so no crime of violence. We went on to look at the next aspect, which is, did it involve a substantial risk? Here, when we do that, we get to that issue. We don't lop it out on a mens rea basis. We get to that issue, and you will argue wrongly, but to my mind, we can say, unlike Tran, that there is a substantial risk here. My final point is, it's hard to find that without some type of proof that... In fact, this is the kind of case where there could have been... You're saying it should be like a beguet, like you do statistical evidence or whatever. There could have been evidence that a certain degree of encounters that start out between acquaintances escalate to forceful situations after non-consent is displayed. It seems to me the perfect subject matter for the type of empirical evidence, because we're talking risk analysis here, and haven't the courts been fairly consistent when there can be a risk analysis? It's at the burden of the government to provide one. But we're not talking here... Well, I mean, we're talking about the agency deciding crime of violence for purposes of deportation, etc. And if they want to say it's the least bit of physical force imaginable, you're out of here. But 16B is a criminal statute, and they don't have any particular expertise in deciding what a criminal statute is. And this Court has said many times there's no deference to a 16B analysis. So at the end of the day, your belief is that in order to demonstrate that victims of sexual assault really don't want to be penetrated, we ought to have statistical analysis? Or that there's a substantial risk of... That there's a substantial risk... Because we know in the forcible context, you wouldn't need analysis, because those are rape cases. But in cases where there is no overt force, violent force, that still there is a risk of that. That wouldn't happen... In this case, and I know we don't consider the facts of the underlying case, but you have a man and a woman who dated each other and knew each other very well, and she froze, didn't move, didn't give her consent, and did at some point say no. But he served four to eight years for that. Thank you very much. Thanks. Thank you. The case is well argued. We'll take it under advisement.